## ALL STAR CORPORATION, Plaintiff

### v.

## GOVERNMENT OF THE VIRGIN ISLANDS, Defendant

Civil No. 79/161

District Court of the Virgin Islands

Div. of St. Croix

February 8, 1980

ROBERT ZIMMERMAN, JR., ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

D. REED AMMON, ESQ., Assistant Attorney General (Department of Law), Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *District Judge*

## MEMORANDUM OPINION WITH ORDER ATTACHED

This matter is before the Court on motion of plaintiff for partial summary judgment made pursuant to Fed. R. Civ. P. 56(c). The sole question presented is whether a contract entered into between the parties is enforceable against defendant, the Government of the Virgin Islands.

### I.

By Act No. 1259, approved 30 October 1964, the Virgin Islands Legislature authorized the issuance of general obligation bonds in various amounts in order to accomplish certain specified projects. Section 6 of this Act states in relevant part:

> Section 6. The proceeds of bonds issued pursuant to this Act shall be paid into the Treasury of the Virgin Islands and applied to the payment of the costs of the purpose or purposes for which such bonds were issued, including payment of temporary indebtedness incurred therefor and the fees and expenses of bond counsel and financial advisor to the Government.

By this section the Legislature provided not only for the acquisition of funds through the sale of bonds, but for the expenditure of these funds as well. The Act was thus both a revenue bill and an appropriation.

By Act No. 3900, approved 27 October 1976, the Legislature amended Act 1259 by adding the following section:

> Section 13. There is hereby created within the Treasury of the Virgin Islands a special fund to be known as the "Section 12 Bond Proceeds Fund." Notwithstanding any other provision of

341

law, the proceeds of bonds issued pursuant to the authority of section 12 of this Act shall be deposited in this Fund. The monies in the Fund in excess of those required to make current expenditures for the purposes for which such bonds were issued shall be invested in interest-bearing securities or accounts pursuant to the provisions of Title 33, section 3336, Virgin Islands Code. Notwithstanding any other provision of law, all earnings on such investments shall be credited to the Section 12 Bond Proceeds Fund and shall be available for expenditure for the purposes for which such bonds were issued, or for the payment of installments due on the bonds, or for the retirement of such bonds by purchase or redemption.

The effect of this amendment was to provide for a special fund for the deposit of bond monies. It did not alter the legislative authorization for the expenditure of bond monies for authorized projects.

By Act No. 4071, approved 17 November 1977, section 12 of Act 1259 was further amended to provide for the sale of bonds for additional projects. As so amended, section 12(n) provided for the sale of bonds:

(n) in a principal amount not to exceed $500,000 to purchase land and construct parking facilities in Christiansted, St. Croix;

Section 2 of Act No. 4071 further stated:

SECTION 2. Any project for which bond monies are authorized by this Act which has not heretofore been specifically authorized by the Legislature is hereby authorized and approved.

The end result of this legislative exercise was to:

(1) Authorize the executive branch to purchase land and construct parking facilities in Christiansted;

(2) Raise $500,000 in bond revenues to fund the project; and

(3) Authorize the executive branch to expend the money thus raised to complete the project.

## II.

Plaintiff is the owner of a commercial parking lot located in Christiansted, St. Croix. Pursuant to the legislation cited in the preceding section, on 22 May 1979, the Commissioner of Property and Procurement (hereinafter "Commissioner") caused to be sent to plaintiff a written offer to purchase the parking lot for $500,000. This offer was accepted in accordance with its terms.

Notwithstanding the acceptance of this offer, defendant refused to proceed with the purchase of the subject property. Plaintiff then filed this action for breach of contract. By its motion for partial summary judgment, plaintiff seeks a determination that the contract entered into is enforceable against defendant and that defendant can be held liable for its breach.

 As has often been demonstrated in cases before this Court, the entering into of contractual relations with the Government of the Virgin Islands is a project fraught with peril. See, e.g., Government of the Virgin Islands v. Bay Corporation, 1975 St. Thomas Supp. 154 (D.C.V.I. 1975). All too often a private party concludes an agreement with an official of the government, only to find that the contracting official lacks the authority to bind the government to its promise. Whatever the cause of such a situation—simple mistake, bad faith or sheer incompetence—an agreement entered into by a government official acting beyond his or her authority is void. 31 V.I.C. sec. 249(a).

In the present case it has been established that the Virgin Islands Legislature authorized the Executive to expend $500,000 for public parking facilities in Christiansted. It has also been shown to the satisfaction of the Court that the Commissioner made an offer to purchase plaintiff's property which was regular on its face and which was properly accepted. The question presented is whether the Commissioner was properly authorized to make the offer.

### III.

The procedures whereby the government may acquire real property—other than by condemnation—are set forth in 31 V.I.C. sec. 231a(a). Once the Legislature has authorized a project requiring the acquisition of real property—as it has done in this case—the Executive proceeds in the following manner:

(1) The Governor identifies the specific property which may be required and expresses in writing his opinion that the property "is needed for a specific public purpose."

(2) The Commissioner commences procedures for appraisal of the property in question. These procedures include the appointment of three appraisers who submit individual written statements of value to the Commissioner and the Legislature.

(3) The Governor may make an offer to purchase the property in question at a price "not to exceed the average of the values submitted by the three appraisers."

(4) If the owner rejects the offer, the Commissioner may then

343

negotiate for the purchase at a price not to exceed 125% of the average of the values submitted by the three appraisers.

Under this statute, acquisition of real property by the government is accomplished in two phases:

(1) The preparatory phase which begins with the determination by the Governor that a specific piece of real property may be needed. This phase proceeds through the appraisal process and ends when the appraisers have submitted their statements of value to the Legislature and the Commissioner.

(2) The negotiation phase commences with the initial offer by the Governor and ends once an agreement has been reached or when negotiations have been abandoned.

The rationale behind this two phase process is obvious. Once the Legislature has authorized a project which requires the acquisition of real property, it is the responsibility of the Executive to carry out the project. If the Legislature has not specified the property to be acquired—as in this case—the Executive must first identify real property suitable for the project. It is then necessary for the Executive to obtain information as to the value of the property, so that negotiations for the acquisition can be intelligently carried out. Only after this initial phase has been completed can the second phase commence.

■■ It appears from the record that the initial phase did not strictly follow the procedures prescribed in the statute in at least two particulars:

(1) The Governor did not express *in writing* his opinion that the property in question was needed for a specific public purpose. Rather, the evidence indicates that he verbally instructed the Commissioner to begin procedures for appraisal of the property.

(2) The appraisers appointed by the Commissioner submitted statements of value only to the Commissioner and not to the Legislature.

Defendant contends that these irregularities in the initial phase are of such magnitude so as to make any contract subsequently entered into "null and ineffective" under 31 V.I.C. sec. 249(a).

To accept defendant's theory as to the effect of these procedural missteps would be to render any government contract void ab initio where the preparatory phase is marred by a bureaucratic failure to observe relatively minor aspects of a statutory scheme. One must observe that such a rule cuts in both directions. If minor bureaucratic missteps can be used to make otherwise regular

344

contracts unenforceable, the government will often find itself unable to enforce contracts which are vital to the welfare of the people.

The manifest purpose of 31 V.I.C. sec. 249(a) is to insure that the government is bound only by officials acting within the scope of their authority. In construing this provision it is necessary to interpret its language so as to accomplish this legislative purpose without doing violence to the legitimate interests of the public in being served by a government capable of conducting public business in a rational fashion. In the case at bar it appears that the procedures preparatory to contract negotiation were substantially complied with. At this point the Court cannot say that the relatively minor discrepancies cited by defendant render a subsequently negotiated contract void.

■ Under 31 V.I.C. sec. 231a(c), the second phase begins with an offer "by the Governor" to purchase specific real property which has been identified and appraised in the initial phase. Here, the offer was made by the Commissioner, rather than the Governor. Defendant asserts that this fact alone renders the contract void. Although I cannot agree that the statute specifically requires the initial offer to be made personally by the Governor, it seems clear that the offer must be expressly authorized in some way by the Governor. If, as defendant claims, the Commissioner made the offer without such express authority, then the contract is void. In this proceeding, I am not faced with the question of how such authority must be expressed.

Viewing the record now before me, it remains a material issue of fact whether the Commissioner was authorized by the Governor to make the offer which was accepted by plaintiff. Plaintiff's motion for partial summary judgment must be denied.

## ORDER

For the reasons set forth in the Memorandum Opinion of even date, it is hereby

ORDERED that plaintiff's motion for partial summary judgment be and the same is hereby DENIED.